IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM T. WULIGER, Receiver,

                Plaintiff,          Case No. 3:04 CV 1479

    -vs-

                                  MEMORANDUM OPINION

POSITIVE LIVING RESOURCES, et al.,

                Defendant.

KATZ, J.

This matter is before the Court on Defendants' motions[1] to dismiss and Plaintiff's response thereto. For the reasons stated below, Defendants' motion to dismiss is denied.

### BACKGROUND

This is one of many cases arising out of viatical insurance litigation which has been ongoing since 1999, resulting in two investor classes and multiple criminal convictions. *See Liberte v. Capwill,* Case No. 5:99 CV 818 (N.D. Ohio). In that case Liberte Capital Group ("Liberte") and Alpha Capital Group ("Alpha") charged that James A. Capwill ("Capwill"), through the entities Viatical Escrow Services, LLC ("VES") and Capital Fund Leasing ("CFL"), unlawfully diverted investor funds escrowed for insurance premiums or awaiting placement in viatical contracts. The Court-appointed General Receiver, Victor M. Javitch[2] ("Javitch"),

---

[1] An initial motion to dismiss was filed shortly on the heels of the original complaint (Doc. No. 2). Subsequent to the Amended Complaint, Defendants filed duplicate motions to dismiss regarding the Amended Complaint (Doc. Nos. 18 and 19).

[2] Initially Frederick M. Luper was appointed Receiver on July 15, 1999; however, effective July

(continued...)

initiated suits against agents, brokers, brokerage houses, banks and various insurers all with an eye towards marshaling assets on behalf of the investors, the ultimate victims in this debacle.

The Receiver brings this suit against Positive Living Resources, Andrew R. Seigel, and John Does one through twelve, related to sales of viatical policies to Alpha and Liberte. Specifically, the complaint charges violations under: (1) RICO, 18 U.S.C. §§ 1961, 1962, and 1964C; (2) unjust enrichment/quantum merit; (3) civil conversion; (4) common law fraud; (5) fraudulent misrepresentation; and (6) negligent misrepresentation.

The Defendants move for dismissal under Fed. R. Civ. P. 12(b) on the basis that this Court lacks personal jurisdiction over them. In contrast, the Plaintiff argues personal jurisdiction exists as the Defendants have transacted business under Ohio's long-arm statute and that specific personal jurisdiction is present under the Due Process Clause.

### DEFENDANTS' MOTION TO DISMISS

*1. Standard Under Fed. R. Civ. P. 12(b)(2).*

A challenge to personal jurisdiction is assigned to Fed. R. Civ. P. 12(b)(2) which states as follows:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or a third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (2) lack of jurisdiction over the person. . .

---

[2](...continued)
26, 2000, Javitch replaced Luper in that capacity. On August 3, 2004, pursuant to a Court order, the duties of the General Receiver were modified, transferred and assumed by the Alpha Receiver, William T. Wuliger. (*Liberte*, Doc. No. 2243.)

In response to a motion to dismiss for lack of personal jurisdiction, the burden is on the plaintiff to demonstrate that jurisdiction is proper. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). The method selected is left to the discretion of the district court. *Id.* Further, "in the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (quoting *Weller v. Cromwell Oil Co.*, 504 F.3d 927, 930 (6th Cir. 1974); *Serras*, 875 F.3d at 1214. The district court's choice determines the weight the plaintiff's burden. *See Dean*, 134 F.3d at 1272; *Theunissen*, 935 F.2d at 1458; *Serras*, 875, F.2d at 1214.

> "When . . . a district court rules on a jurisdictional motion to dismiss . . . without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff . . . To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction. Furthermore, a court . . . does not weigh the controverting assertions of the party seeking dismissal . . ."

*Dean*, 134 F.3d at 1272 (quoting *Compuserve*, 89 F.3d at 1262). Dismissal is only proper if all the facts taken together fail to establish a *prima facie* case for personal jurisdiction. *Compuserve*, 89 F.3d at 1262.

While the standard set forth above for establishing personal jurisdiction in the absence of an evidentiary hearing is minimal, a defendant is not without recourse. *Dean*, 134 F.3d at 172 (citing *Serras*, 875, F.2d at 1214-15). A defendant can move the Court to hold a pre-trial hearing, or the Court may so do on its own if it believes that the written filings raise enough controverted facts or call for assessing credibility, and order sufficient discovery in advance of the hearing. *Id.* Further, even if the court issues an order finding personal jurisdiction over the defendant, the defendant may raise lack of jurisdiction at trial. *Id.*

"In dealing with a diversity case, we look to the law of the forum state to determine whether personal jurisdiction exists."[3] *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). *See also Nationwide*, *Nationwide Mut. Ins. Co. v. Tryg Int'l*, 91 F.3d 790, 793 (6th Cir. 1996) (citing *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1298 (6th Cir. 1989). That is, personal jurisdiction exists over a nonresident "if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Michigan Coalition of Radioactive Materials Users*, *Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)). In *Bird*, however, the court stated:

> We have recognized that Ohio's long-arm statute is not conterminous with federal constitutional limits. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (noting that "the Ohio Supreme Court has ruled that the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause")

---

[3] The Court notes that Plaintiff's Complaint also alleges that the Defendants, including Siegel, have violated RICO, which provides a broader test of personal jurisdiction than that provided for in *Mohasco*. *FRC Int'l v. Taifun Feuerloschgeratebaus und Vertriebs GmbH*, No. 3:01 CV 7533, 2002 WL 31086104, at *6 n.1 (N.D. Ohio Sept. 4, 2002) (citing *Suarez v. McGraw*, 71 F. Supp. 2d 769, 777 (N.D. Ohio 1999)).

>   (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994) (per curiam). Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, we have consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend "traditional notions of fair play and substantial justice." Id. (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945); *Cole v Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (addressing the due process concerns rather than inquiring into the propriety of jurisdiction under Ohio's long-arm statute).

*Bird*, 289 F.3d at 871-72.

Personal jurisdiction may be based on either general or specific jurisdiction. *Id.* at 873. "General jurisdiction is proper only where 'a defendant's contacts with the forum state are of such a continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state.'" *Id.* at 738 (quoting *Third Nat'l Bank in Nashville v. Wedge Group Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989)). In contrast, specific jurisdiction is proper under circumstances "where a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. *Id.* at 874 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)). Specific jurisdiction may be based on a single act. *Nationwide*, 91 F.3d at 794 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222, 2 L. Ed. 223, 78 S. Ct. 199 (1957)).

With these legal precepts in mind, the Court now turns to the issues at hand.

*2. Discussion*

Under Ohio Rev. Code § 2307.382:

(A) A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

>   (1) Transacting business in this state;

5

> (2) Contracting to supply services or goods in this state;
> (3) Causing tortious injury by an act or omission in this state;
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state; . . .

The Ohio Supreme Court has interpreted the term "transacting business" for purposes of personal jurisdiction broadly as follows:

> "Transact," as defined by Black's Law Dictionary (5 Ed.1979) 1341, " * * * means to *prosecute negotiations;* to carry on business; *to have dealings * * *. The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *." (Emphasis added.)

*Kentucky Oakes Mall Co. v. Mitchell's Formal Wear, Inc.,* 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480 (1990), *cert. denied,* 499 U.S. 975 (1991).  Moreover, "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236, 638 N.E.2d 541, 544 (1994).

The Defendants contend they did not transact business within Ohio and the lack of such an allegation in the complaint requires dismissal of this action. They further argue that they maintain no offices in Ohio and do not advertise in Ohio. However, the complaint alleges a purchase of policies from viatical brokers which were represented to be valid policies but which were procured via fraudulent conduct. According to the custodian of records for the Plaintiff, the face amount of insurance policies procured from the Defendant broker was over of $6,000,000 and the commissions paid to Defendants were over $345,000. The Defendants provided information from viators to viatical providers such as Alpha and Liberte. In turn for its services, the Defendants received commissions from the sales of policies. Communication between the viator and the

viatical provider was facilitated by Defendants in completion of these transaction.  Considering the number of policies purchased and commissions paid, the Defendants conducted business in Ohio.

Next, the Court must consider whether specific jurisdiction exists to comport with the Due Process Clause as set forth below:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 380 (6th Cir. 1968).  As noted by the Sixth Circuit in *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721-722 (6th Cir. 2000):

> This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. There is a difference between what *World-Wide Volkswagen* calls a mere "collateral relation to the forum State," and the kind of substantial relationship with the forum state that invokes, by design, "the benefits and protections of its laws." An understanding of this difference is important to the proper application of the "purposeful availment" test.

In this instance, the communications between the viatical provider and Defendants and representations therein were the catalyst which lead to transactions resulting in commission payments to the Defendants.  Assuming the viatical provider completed the transaction and not paid the broker's commission, Defendants arguably had an action against the viatical provider in the forum state of Ohio.   Considering the representations upon which the viatical provider is alleged to have relied upon and the resulting purchase of policies, it cannot be said that the relationship between Defendants and forum state was random or attenuated.   Rather, through its conduct and the commissions derived therefrom, the Defendants appear to have reaped benefits

7

from the forum state as well as the protections of law therein. Thus, it would appear that Defendants availed themselves of causing a consequence in Ohio.

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe,* 89 F.3d at 1267. As applied to this action, it is clear that Plaintiff's claims against Defendants arise from their contacts and resulting transactions/payment of commissions.

The third prong requires the Court to consider whether "the consequences of the act or breach caused by the defendant have a substantial enough connection with the forum state." *Calphalon*, 228 F.3d at 724. Factors which a trial court may consider include "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *CompuServe,* 89 F.3d at 1268.

It is safe to say that Ohio has a strong interest in the sale of worthless insurance policies to an Ohio entity which then marketed them as valid investment vehicles to its investors. While the Defendants are located in Florida, they do advertise in at least eight states thereby rendering themselves amenable to litigation outside of Florida. There is nothing to suggest that Defendants are unable to defend an action in this forum.

Therefore, upon consideration of the factors under *Mohasco*, the Court finds that the Plaintiff has established sufficient contacts by the Defendant with the forum state.

**CONCLUSION**

Accordingly, the Court finds the Plaintiff has established a *prima facie* case of personal jurisdiction over these Defendants. For the reasons stated above, the Defendants' motions to dismiss (Doc. Nos. 2, 18, and 19) are denied.

The Court will conduct a case management conference by telephone on February 23, 2006 at 10:00 a.m.

IT IS SO ORDERED.

                                               S/ *David A. Katz*
                                               DAVID A. KATZ
                                               SENIOR U. S. DISTRICT JUDGE